[Cite as *State v. Colley*, 2017-Ohio-4080.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 16CA3740 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| ROBERT C. COLLEY, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 05/26/17** |

_____
APPEARANCES:

John A. Gambill, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Jay Willis, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Robert C. Colley appeals his conviction in the Scioto County Court of Common Pleas after a jury found him guilty of one count of illegal assembly or possession of chemicals for the manufacture of drugs, a third-degree felony. On appeal, Colley contends: (1) the trial court erred in denying his motion for a directed verdict on the ground of improper venue; (2) the evidence was insufficient as a matter of law or, in the alternative, his conviction was against the manifest weight of the evidence, when the State presented no evidence of "intent to manufacture" methamphetamine; and (3)

the trial court erred in permitting evidence of third parties' purchase of pseudoephedrine, unrelated to his case. Upon review, we find no merit to Appellant's arguments. As such the trial court did not err. Accordingly, we overrule Appellant's three assignments of error and affirm the judgment of the trial court.

FACTS

{¶2} On May 20, 2015, Robert C. Colley was indicted on one count of illegal assembly or possession of chemicals for the manufacture of drugs, a violation of R.C. 2925.041(A), and a felony of the third degree. The indictment occurred after an officer for the Ohio Department of Natural Resources ("ODNR") discovered two discarded bags of trash containing three boxes of pseudoephedrine product, an active ingredient used for the assembly of methamphetamine, along Big Run Road in the Shawnee State Forest. Items in both trash bags belonged to Jeannie Kinzer, Appellant's co-defendant and girlfriend at the time.[1] While none of the items were directly linked to Appellant, ODNR's investigation revealed that Appellant had purchased pseudoephedrine close in time to purchases made by Kinzer. Kinzer's trial testimony later linked some of the contents in the trash bags to Appellant.

---

[1] Kinzer testified she has three children. Appellant is the father of her youngest, 11 months old at the time of trial. It is unclear if Appellant and Kinzer were still involved in romantic relationship at the time of trial.

{¶3} Appellant proceeded to a jury trial on February 23, 2016. The State's case began with testimony from ODNR Officer Bryce Morris. Officer Morris testified regarding his background and training in recognition and awareness of clandestine labs for the production of methamphetamine. On October 12, 2014, Officer Morris was patrolling the Brush Creek State Forest area in Scioto County, investigating litter dump sites along the road, when he discovered two trash bags. This area of Scioto County is not far from the Pike County, Ohio, line. Officer Morris testified he was looking for items which could be connected to the production of methamphetamine.

{¶4} Officer Morris searched the trash bags and found the following:

1) An envelope from the Ohio Department of Job and Family Services addressed to "Jeannie Kinzer" at "1926 McDermott Rushtown Road";

2) An empty package of electrical tape;

3) A Kroger magazine addressed to "Derrick Tackett" at the same address on McDermott-Rushtown Road;

4) An ice compress with the top right hand corner cut; and

5) Three boxes of Leader Allergy Relief D-24.

{¶5} Officer Morris testified pseudoephedrine is an active ingredient in the manufacture of methamphetamine and the three boxes of Leader Allergy Relief D-24 were sold at Bartley's Discount Pharmacy in Waverly,

located in Pike County, Ohio.  The ingredients listed on the boxes include pseudoephedrine sulfate.

{¶6}  Officer Morris testified in the "one-pot" method of manufacture, electrical tape may be used to seal off a bottle to make it airtight.  He also explained the product inside an ice compress, ammonium nitrate, is one of the ingredients for manufacture.  The corner being cut on the compress was not the typical use of a compress, because the ammonium should not touch one's skin.

{¶7}  In the second trash bag, Officer Morris found the following:

1) Multiple empty pill blister packs from the three empty boxes of Leader Allergy Relief D-24, from Bartley's Pharmacy;

 2) A grocery list of various items including sea salt and coffee filters;

3) A capped and empty 20-ounce Mello Yello bottle, containing a capped syringe.

{¶8}  Officer Morris testified coffee filters are used to filter liquid and leave behind crystallized methamphetamine.

{¶9}  Officer Morris further testified after looking through the items, he began researching Jeannie Kinzer and Derrick Tackett's names and addresses in OLEG,[2] and another database, NPLEX.[3]  Officer Morris

---

[2] OLEG is the Ohio Law Enforcement Gateway database, overseen by the Ohio Attorney General's Office.
[3] NPLEX is the National Precursor Log Exchange, overseen by the federal government.  This database tracks purchases of products containing pseudoephedrine.

identified a summary record of Jeannie Kinzer's pseudoephedrine purchases, showing transaction dates and locations. Officer Morris also identified an NPLEX record and summary of Appellant's pseudoephedrine purchases at Bartley's Pharmacy and at a Walmart Pharmacy both in Waverly, Ohio.[4]

{¶10} Andy Canterbury, the Asset Production Manager at the Waverly Walmart, testified about Walmart's video surveillance system. He testified there are approximately 180 cameras inside the store. The cameras record for approximately 93 days. Canterbury is able to view multiple cameras at a time, link them together, and watch an individual moving throughout the store.

{¶11} Canterbury testified that on October 19, 2014, he assisted Officer Morris in reviewing several days of surveillance video. Canterbury identified a CD he burned for Officer Morris, showing Jeannie Kinzer and Appellant purchasing pseudoephedrine products. Canterbury also took still photographs from the video. Canterbury identified an overshot of a register, an electronic journal from the Waverly store, and the still photographs taken from the video surveillance.

{¶12} On October 19, 2014, Officer Morris and another ODNR officer, Charles Carlson, went to Walmart with the NPLEX records to

---

[4] Waverly is a village in Pike County.

review the Walmart footage. They had enlarged BMV photos of Appellant and Jeanie Kinzer. On October 3rd, they observed a red Ford Explorer entering the parking lot and Kinzer entering the store. They were able to match the surveillance video with the database records of purchase. Kinzer purchased Sudafed. Also on that date, Appellant purchased Leader Allergy Relief D-24 at Bartley's.

{¶13} The officers also reviewed the pharmacy counter camera and then back-tracked to find Appellant and Kinzer's vehicle in the parking lot. Kinzer then met with two other individuals - Appellant and a third subject. The group met at the pharmacy counter, then separated. Kinzer left the store and pulled a red Ford Explorer near the front of the store. Appellant was observed in the video checking out.[5] Appellant and the other individual left the store and got into Kinzer's vehicle.

{¶14} Morris also testified that on August 23rd surveillance footage, Kinzer was at the front desk purchasing and they matched her record with NPLEX. They also viewed Appellant exiting the store, with Sudafed purchases recorded on that date.

{¶15} As a result of viewing these tapes, Morris attempted to interview Kinzer at the address found in the trash bags. They were able to

---

[5] The third subject, wearing a white bandana and black jacket, was tracked to the battery section of Walmart's electronics department. Officer Morris testified lithium batteries are also used in the one-pot method.

locate Derrick Tackett, her brother. The officers were unable to make contact with Kinzer. Meanwhile, the Mello Yello bottle with the syringe was tested for DNA by the Ohio Bureau of Criminal Identification and Investigation ("BCI"). The DNA was matched to Jeannie Kinzer.[6] Based on the investigation, Officer Morris filed indictments against both Appellant and Kinzer.

{¶16} On cross-examination, Officer Morris testified he has investigated 3 methamphetamine cases. He admitted his duties are "spread pretty thin." He also acknowledged:

1) He was testifying from his report prepared 18 months earlier;

2) The Mello Yello bottle was the only DNA sample sent to BCI;

3) He did not order fingerprinting and did not take a statement from Kinzer;

4) Other entries in the NPLEX summary show Kinzer purchasing without Appellant's presence;

5) Appellant also purchased Claritin-D within the legal limits and on dates he was allowed to purchase;

6) Officer Morris never reviewed Appellant's medical history; and,

---

[6] Kinzer's DNA was provided from a previous sample retrieved from the Ross County Sheriff's Department.

7)  None of the documents in the trash bags could be directly connected to Appellant.

{¶17}  On redirect, Morris reiterated the significance of the NPLEX purchase records.  Kinzer's summary demonstrates she made 16 purchases of pseudoephedrine products between April 1, 2014 and January 8, 2015.  Appellant made 12 purchases in 2014.  Five times in 2014, Appellant and Kinzer purchased on the same date.

{¶18}  The next witness, Thomas Kelley, the Pharmacy Manager at Waverly Walmart, testified pseudoephedrine is a stimulant decongestant, an over-the-counter product used for relief of cold symptoms.  Although it is not an allergy medicine, it is sometimes combined with allergy medicine.  Kelley testified pseudoephedrine is used illegally to reduce it from its current form into methamphetamine.

{¶19}  Kelley further testified due to the Control Methamphetamine Act, pharmacies must maintain records of pseudoephedrine sales.  A person purchasing pseudoephedrine has to provide the purchaser's address and a current photo ID, without alteration.  Walmart keeps its own database in the home office, in the normal course of business, and the records are shared with NPLEX.

{¶20}  Kelley testified he saw many individuals from Scioto County, Ohio, with no patient relationship to the Walmart Pharmacy, attempting to

purchase pseudoephedrine.  Specifically, he testified on a typical day, 30-40 people request pseudoephedrine and half, if not more, are residents from Scioto County.  He has visually verified this fact by viewing driver's licenses.

{¶21}  Kelley identified purchase records for Jeannie Kinzer and for Appellant.  Kinzer's purchase record showed Allergy and Congestion Relief purchased on August 23, 2014.  Both items can be broken down to make methamphetamine.  On October 3, 2014, Kinzer purchased Decongestant, 12 hour Max.  Appellant's purchase record reflected purchases of drugs that can be converted to methamphetamine.

{¶22}  On cross examination, Kelley explained that decongestant is used to relieve nasal pressure.  Under Ohio law, a person can buy 3.6 grams per day.  Kelley acknowledged none of his records showed Appellant making illegal purchases.

{¶23}  Vanessa Rigsby, a manager at Bartley's Pharmacy, testified she trains other employees on pseudoephedrine sales and is aware of illegal uses.  Rigsby also explained the procedure for pseudoephedrine sales.  When a customer requests a product, Bartley's computer scans the driver's license and the product.  Once that is done, the computer will advise if the sale can be completed, or if the purchaser has bought the limit anywhere else.  The

electronic records are stored in Bartley's computer, kept in the normal course of business, and shared with NPLEX. Rigsby identified an October 3, 2014 record of purchase of Leader Allergy Relief D-24 from Bartley's, sold to Appellant.

{¶24} Officer Charles Carlson, an investigator for ODNR, testified that ODNR had recently been finding methamphetamine dumps along the roadways. He assisted in the cleanup of these dumps. Officer Carlson also testified as to the ingredients used and the process for breaking down pseudoephedrine and making it into methamphetamine.

{¶25} On October 12, 2014, Officer Morris contacted Officer Carlson and showed him pictures of the trash collected. The totality of the ingredients discarded led Officer Carlson to believe a one-pot method had been discarded. Since there were no fingerprints, they tested DNA on the bottle. They also had receipts and tracked the purchasers through NPLEX. Carlson identified the State's exhibits.

{¶26} On cross-examination, Officer Carlson testified he is one of six investigators for 25 counties. He testified he and Officer Morris linked Appellant to the bags through the video surveillance showing his purchases.

{¶27} The State's last witness was Jeannie Kinzer. She testified she is 36 years old, an admitted drug addict for 11 years. She was currently in

treatment. Kinzer also admitted she has a felony conviction for illegal manufacturing, for which she received a five-year sentence of probation, and two petty theft convictions from other counties. She was subpoenaed and did not want to testify against Appellant.

{¶28} Kinzer met Appellant when they were teenagers. They reconnected in 2013. At the time, Appellant was in treatment. They formed a relationship after he completed treatment in 2013. Kinzer used methamphetamine, for the first time, with Appellant on New Year's Eve 2014.[7]

{¶29} Kinzer testified the Big Run Road area was a solitary place, about three miles from where they lived. She and Appellant went there to be alone and to "shoot up" because it was private. Kinzer testified she used Suboxone or methamphetamine. Towards the end of 2014, she was using Suboxone and methamphetamine, with Appellant, daily. They administered it through syringes.

{¶30} Kinzer testified she would purchase pseudoephedrine and then trade it for Suboxone, money, or methamphetamine. She always went to the Waverly Walmart. Sometimes Appellant went with her. He was also purchasing pseudoephedrine, but she did not see what he did with his boxes.

---

[7] The date given is "New Year's Eve 2014," however, we consider this may be a scrivener's error as, in light of her other testimony, it would be more logical for the date to actually be "New Year's Eve 2013."

Importantly, Kinzer testified Appellant "always" drove her vehicle because he did not like the way she drove.

{¶31} Kinzer identified a photograph of her vehicle, herself, and Appellant on October 3, 2014. She also identified her signature for a purchase of a pseudoephedrine product. Kinzer also identified her Job and Family Services mail with the McDermott-Rushtown Road address, as well as the grocery list in her writing. She testified the sea salt and coffee filters on the list had nothing to do with her making methamphetamine. Kinzer denied throwing out the trash bags on Big Run. She also denied cutting the corner of the ice pack.

{¶32} Kinzer identified her brother's name, Derrick Tackett, on the Kroger magazine. Kinzer testified her brother always gave her his Kroger coupons, but he had nothing to do with the items located in the trash bags. He was not living with her at the time.

{¶33} Kinzer testified Appellant purchased at Bartley's Pharmacy if they could not get pseudoephedrine from Walmart. Kinzer testified during the time she was using methamphetamine, she did not know who was actually making it. Appellant would take the boxes of pseudoephedrine and come back with methamphetamine. He had a lot of contacts and he didn't

want her to meet them, for her protection.  Specifically, she testified "I do not know if he was making it."

{¶34}  On cross-examination, Kinzer admitted she had worked at a nursing home in Hillsboro and was suspended for suspicion of theft of narcotics.  She testified she had already violated her probation by testing positive for methamphetamine.  She testified in the past she had observed Appellant sleeping and sometimes he had difficulty breathing.  Kinzer also recalled writing Appellant a letter in which she said she felt pressured to testify against him.  She testified she did not recall the Mello Yello bottle or the other items she was shown by the prosecutor.

{¶35}  At this point, the State moved to admit all but one of its exhibits, and the court granted this motion.  Defense counsel moved for a directed verdict on the issue of venue, arguing that none of the actions alleged to be in violation of the law occurred in Scioto County.  The motion for directed verdict was overruled.  Then the State rested.  Appellant did not present evidence.

{¶36}  The jury found Appellant guilty.  He was subsequently sentenced to a maximum prison term of thirty-six months.  This timely appeal followed.

## ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE ON THE GROUND OF IMPROPER VENUE.

II. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT APPELLANT OF ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS AS INDICTED; OR, IN THE ALTERNATIVE, THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. THE COURT ERRED IN PERMITTING THE TESTIMONY OF THOMAS KELLEY REGARDING UNKNOWN THIRD PARTY CONDUCT IN PURCHASING PSEUDOEPHEDRINE FROM WAVERLY WALMART WHEN SUCH ALLEGED INCIDENTS ARE UNRELATED TO THE PRESENT CASE AND THE SAME ARE SEVERELY PREJUDICIAL."

ASSIGNMENT OF ERROR ONE

**{¶37}** Under the first assignment of error, Appellant points out that venue is an essential element of proving a criminal defendant's guilt at trial. At the close of trial, Appellant's counsel moved for a directed verdict on the ground of improper venue inasmuch as there was no evidence Appellant committed any illegal acts in Scioto County. Appellant argues the evidence is clear that all of the events in question occurred in Pike County, not Scioto County, as alleged in the indictment.

**{¶38}** In response, Appellee acknowledges that the series of events by which Appellant and Kinzer gathered materials to manufacture

methamphetamine began by purchasing pseudoephedrine in Pike County. However, Appellee asserts there is no authority which requires all events leading to a criminal act to occur within one county. Moreover, the evidence that was linked to the criminal activity was dumped and discovered in Scioto County. Appellee concludes there was competent credible evidence beyond a reasonable doubt upon which to overcome a Crim.R. 29 motion for acquittal based on venue.

## A.  STANDARD OF REVIEW

{¶39}  Under Crim.R. 29(A), "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of acquittal * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." *State v. Wright,* 4th Dist. Athens No. 15CA31, 2016-Ohio-7654, ¶ 21.  "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *Id.* quoting *State v. Tenace,* 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37; *State v. Husted,* 2014-Ohio-4978, 23 N.E.3d 253, ¶ 10 (4th Dist.).  "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

doubt.' " *Id.* at 22, quoting *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781 (1979).  In making its ruling a court does not weigh the evidence but simply determines whether the evidence, if believed, is adequate to support a conviction.  In other words, the motion does not test the rational persuasiveness of the State's case, but merely its legal adequacy. *State v. Reyes–Rosales,* 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 15.  Over a century of well-established jurisprudence clearly mandates that a motion for judgment of acquittal must be granted when the evidence is insufficient for reasonable minds to find that venue is proper. *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 24.

## B.  LEGAL ANALYSIS

{¶40}  The Ohio Constitution, Article I, Section 10 provides an accused the right to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." *Hampton, supra,* at ¶ 19.  The Supreme Court of Ohio has stated, "Section 10, Article I of the Ohio Constitution fixes venue, or the proper place to try a criminal matter * * *." *Id.*, quoting *State v. Headley,* 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983).  "A conviction may not be had in a criminal case where the proof

fails to show that the crime alleged in the indictment occurred in the county where the indictment was returned." *Hampton, supra*, quoting *State v. Nevius,* 147 Ohio St. 263, 71 N.E.2d 258 (1947), paragraph three of the syllabus.

{¶41}  The Supreme Court has also stated: "[I]t is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *State v. Dickerson,* 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus.  In our own decision in *Wright, supra,* we observed at ¶ 27:

> " 'The purpose of the venue requirement is to give the defendant the right to be tried in the vicinity of the alleged criminal activity, and to limit the state from indiscriminately seeking a favorable location for trial that might be an inconvenience or disadvantage to the defendant.' " *State v. Webster,* 8th Dist. Cuyahoga No. 102833, 2016-Ohio-2624, 2016 WL 1593052, ¶ 78, quoting *State v. Koval,* 12th Dist. Warren No. CA2005–06–083, 2006-Ohio-5377, ¶ 9; *see also State v. Mercer,* 4th Dist. Ross No. 14CA3448, 2015-Ohio-3040, at ¶ 9."

{¶42}  "Ideally, the prosecution will establish venue with direct evidence." *State v. Mercer,* ¶ 11, quoting *State v. Quivey*, 4th Dist. Meigs No. 04CA8, 2005-Ohio-5540, ¶ 16, (judgment reversed in part by Ohio Criminal Sentencing Statutes Cases, May 3, 2006), citing *Toledo v.*

*Taberner,* 61 Ohio App.3d 791, 793, 573 N.E.2d 1173 (6th Dist.1989).  Yet, the General Assembly has given the state considerable flexibility with respect to establishing venue when the state cannot determine the precise location at which the offense took place. *Hampton, supra,* at ¶ 23.  R.C. 2901.12(G) allows for an offense that was committed in any of two or more jurisdictions to be charged in any of those jurisdictions.  The requirement of "[v]enue is satisfied where there is a sufficient nexus between the defendant and the county of the trial." *Wright, supra,* at ¶ 27, quoting *State v. Chintalapalli,* 88 Ohio St.3d 43, 45, 723 N.E.2d 111 (2000), citing *Draggo,* 65 Ohio St.2d at 92, 418 N.E.2d 1343.

{¶43}  The sufficiency of evidence of venue was challenged in our own district in *Mercer, supra.*  There the defendant was convicted of theft from a Menards store.  On appeal, Mercer argued no State's witness explicitly testified that the store was located in Ross County.  However, we observed although the State did not provide explicit testimony as to venue, the State did present evidence that the Chillicothe Police Department responded to the report.  We concluded that while the State's evidence might be far from overwhelming, it was sufficient to establish venue.  A reasonable fact-finder could determine that the Chillicothe Police Department's response to the scene indicated that the Menards store was located in Ross

County. *See State v. Curry,* 2nd Dist. Greene No.2012–CA–50, 2014-Ohio-3836, ¶ 23, *State v. Woodson,* 4th Dist. Ross No. 97CA2306 (Feb. 11, 1998).

{¶44} We considered a venue issue in *State v. Young,* 4th Dist. Meigs No. 458, 1992 WL 188485, (July 28, 1992). There Young appealed from a kidnapping conviction, arguing on appeal that there was insufficient evidence that the proper venue was in Ohio. The defendant claimed that all the elements of the crime occurred in West Virginia. However, we found viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the occurrence in Meigs County, Ohio, in particular of all of or at least part of the deception to remove the victim from her home in Ohio, had been proven beyond a reasonable doubt. Observing the requirements of R.C. 2901.01(A) and (G), we stated: "It is not essential to criminal responsibility that the accused do every act necessary to accomplish the crime within the jurisdiction where he is prosecuted. Venue lies for all the offenses in any jurisdiction in which any of the elements of the offense were committed." *Id.* at *4.

{¶45} We considered the defendant's argument that venue had not been sufficiently proven in *State v. Cremeans,* 5 Ohio App.3d 8, 448 N.E.2d 837 (4th Dist.1982). There, Cremeans was convicted for unlawfully interfering with a game protector performing his duties. On appeal,

Cremeans argued the trial court erred by overruling his motion for a directed verdict, based upon improper venue, when the exact location where the offense occurred was unknown by the State of Ohio. Citing the venue statute, R.C. 2901.012(G), we observed that the evidence was uncontroverted that the offense occurred close to the Athens County and Meigs County boundary lines. We agreed with the trial court's conclusion finding R.C. 2901.12(G) applicable under the facts of the case.

{¶46} More recently, in *State v. Wright, supra*, the defendant appealed from the judgment of the Athens County Court of Common Pleas convicting her of two counts of interference with custody and sentencing her to community control. Wright asserted that the trial court erred in denying her motion for judgment of acquittal at the close of the evidence because there was insufficient evidence of venue in Athens County when she, her husband, and their children did not reside in that county when the crimes occurred. We reasoned: "Because the "without privilege to do so" element of the interference with custody offenses occurred in Athens County, the fact that Wright, her husband, and the children may not have been residents there on the date she removed the children from Ohio to Texas did not deprive Athens County from venue to try Wright for those offenses." After viewing the evidence in a light most favorable to the prosecution, we found a rational

trier of fact could have found that the State had proven that Athens County was a proper venue for the criminal charges. *Id.* at 34.[8]

{¶47}  In the case sub judice, in making the Crim.R. 29 motion, defense counsel emphasized nothing in the trash bags was linked to Appellant, and that every action took place in Pike County.  The State responded, citing Kinzer's testimony that Appellant "always" drove her car; that the trash was from her car; and that they went to Pike County to buy pseudoephedrine but brought it back to Scioto County and traded it for methamphetamine that they used on Big Run, where the trash was found. The trial court overruled the Rule 29 motion and we do not find this to be error.

{¶48}  After reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the element of venue, in Scioto County, proven beyond a reasonable doubt.  The evidence is clear that Appellant purchased pseudoephedrine in Pike County. However, the ODNR officers discovered a clandestine lab, one-pot method,

---

[8] *See State v. Miller,* 63 Ohio App.3d at 485, 579 N.E.2d 276 (finding venue appropriate where it was obvious the crime occurred somewhere along the banks of the Little Miami River, but uncertain if the incident occurred in Warren County or a neighboring county through which the Little Miami River runs), *See also State v. Palmer,* 9th Dist. No. Civ.A. 2323-M, 1995 WL 48442 (finding venue appropriate in Medina County where a child victim could not recall if offenses occurred at her family's residence in Cuyahoga County or their subsequent residence in Medina County due to her young age), and *State v. Christman*, 7th Dist. No. 786, 1999 WL 343411 (finding venue appropriate in Monroe County where murder victim, whose body was never found, was last seen by defendant and reported missing in Belmont County, but defendant made statements to several witnesses that places in Monroe County would be good for hiding a body or that he buried the victim at those places).

in trash bags discarded in Scioto County.  The trash bags contained the various ingredients and precursors to methamphetamine production, i.e. the empty boxes of Leader Allergy Relief D-24; the cut ice compress; the empty blister packs; the grocery list for coffee filters and sea salt; and the Mello Yello bottle containing a syringe.

{¶49}  Jeannie Kinzer testified she did not make methamphetamine, but she gave her boxes of pseudoephedrine to Appellant and he returned with methamphetamine.  She testified he always drove her car.  She testified she did not cut the ice compress, and she did not discard the trash bags.  These facts will be discussed further below.

{¶50}  We find, however, any rational trier of fact could have found an element of the manufacture of methamphetamine, as in *Young, supra*, was committed in Scioto County.  The evidence is uncontroverted that Appellant's offense, as in *Cremeans*, occurred close to the Scioto and Pike County line, making R.C. 2901.12(G) applicable to these facts.  For the foregoing reasons, we find the trial court did not err by overruling Appellant's Crim.R. 29 motion for acquittal.

ASSIGNMENT OF ERROR TWO

{¶51}  Appellant argues under the second assignment of error that the evidence was legally insufficient to convict him or, in the alternative, that

his conviction was against the manifest weight of the evidence. He contends there is no direct evidence that Appellant engaged in the illegal assembly or possession of chemicals for the manufacturing of drugs, specifically methamphetamine. Specifically, he argues the State presented no evidence linking him to the items discovered by the ODNR officers, only that he purchased pseudoephedrine and had used methamphetamine during the relevant time period. Moreover, he argues, the State's case used inferences and circumstantial evidence and failed to prove the essential element that Appellant had an intent to manufacture.

## A. STANDARD OF REVIEW

{¶52} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. The reviewing court must bear in mind however, that credibility generally is an issue for the trier of fact to resolve. *State v. Wickersham,* 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, ¶ 25; *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular

witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya,* 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson,* 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997).  As explained in *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517:

> " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *accord  State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶53} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Wickersham, supra,* at ¶ 26, quoting *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.,* quoting *Martin*, 20 Ohio App.3d at 175; *State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶54} When reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, we must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Hollis,* 4th Dist. Pickaway No. 09CA9, 2010-Ohio-3945, ¶ 20, citing *State v. Smith,* 4th Dist. Pickaway No. 06CA7, 2007-

Ohio-502, at ¶ 33, quoting *State v. Jenks* at paragraph two of the syllabus.

*See also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781 (1979).

{¶55} The sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence." *Hollis* at ¶ 21; *Smith* at ¶ 34, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). Instead, the sufficiency of the evidence test " 'gives full play to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Smith,* at ¶ 34, citing *State v. Thomas,* 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356 (1982); *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

## B.  LEGAL ANALYSIS

{¶56} When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. *Wickersham, supra,* at ¶ 27. *State v. Pollitt,* 4th Dist. Scioto No. 08CA3263, 2010-Ohio-2556, ¶ 15.  " 'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *State v. Lombardi,* 9th Dist. Summit No. 22435, 2005-

Ohio-4942, ¶ 9, quoting *State v. Roberts,* 9th Dist. Lorain No. 96CA006462

(Sept. 17, 1997).

**{¶57}** Appellant was convicted of R.C. 2925.04 which states:

"(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance."

**{¶58}** Appellant was also convicted of R.C. 2925.041, illegal

assembly or possession of chemicals for manufacture of drugs which

provides:

"(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

**{¶59}** Furthermore, R.C. 2925.041(B) provides:

"In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section."

**{¶60}** The evidence against Appellant is circumstantial and we begin

by recognizing that it is well-established, however, that "a defendant may be

convicted solely on the basis of circumstantial evidence. *Wickersham, supra,*

at ¶ 39, quoting *State v. Nicely,* 39 Ohio St.3d 147, 151, 529 N.E.2d 1236

(1988). "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, paragraph one of the syllabus. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *' " *Nicely*, 39 Ohio St.3d at 150, quoting Black's Law Dictionary (5 Ed.1979) 221.

{¶61} As we begin our analysis, we call attention to the Eighth District Court of Appeals in *State v. Seldon,* 8th Dist. Cuyahoga No. 98429, 2013-Ohio-819, where the defendant's conviction for assembly or possession of chemicals used for the manufacture of drugs was overturned by the appellate court. Seldon was charged with one count of assembly or possession of chemicals used for the manufacture of drugs and one count of carrying a concealed weapon subsequent to a lawful traffic stop. Seldon was driving his friend's truck and two others were riding with him. Pursuant to the stop, troopers located various items which can be used in the manufacture of a controlled substance. At trial, Seldon's father testified his son was going to look for work in the area at the time of his stop. Seldon testified some of the items in the truck were purchased by him that day, for the purpose of work on damaged or inoperable vehicles. He testified, in

particular, to having matchbooks because he stamped them to advertise his

services. He admitted 24 Sudafed pills were his, but a package of 96, and

some starting fluid, were not his. He testified to having iodine in the vehicle

to treat sores on his arm.

{¶62} Seldon further acknowledged trying methamphetamine, but

testified it was years before, not one week before as a trooper had previously

testified. He denied that the items in the truck were purchased for the

purpose of illegally manufacturing methamphetamine. He also denied

knowing how to manufacture methamphetamine or having done so in the

past. Although the jury returned a guilty verdict, the appellate court held the

State failed to prove by sufficient evidence that Seldon possessed the

chemicals discovered with an intent to manufacture methamphetamine. In

this case, the court held at ¶ 21:

> "Under the clear requirements of R.C. 2925.041(A), the mere
> assembly or possession of chemicals that could be used to
> produce a controlled substance is not sufficient to prove the
> performance of the criminal act. *State v. Cumberledge,* 11th
> Dist. No. 2010–L–142, 2012–Ohio–3012. In addition to
> possessing the chemical, the state must further demonstrate a
> present intent on the part of the defendant to actually use the
> chemical in the future to produce the illegal drug. *Id.*
>
> * * *
>
> In most instances, proof of this intent will likely be based upon
> the defendant's completion of a subsequent act, such as an
> initial step in the manufacturing process." *Seldon, supra.*

**{¶63}** The *Seldon* court emphasized at ¶ 24:

"In cases throughout Ohio where convictions for Assembly or Possession of Chemicals used to Manufacture Controlled Substance were upheld, the state produced evidence from which a jury could conclude beyond a reasonable doubt that the requisite intent to manufacture existed. *Seldon* at 24. Such evidence included the following: That the defendant knew how to manufacture methamphetamine, *State v. Stevenson,* 5th Dist. No. 09CA16, 2010-Ohio-2060; that the defendant made admissions that he intended to manufacture and/or had participated in the manufacture of methamphetamine, *State v. Smith,* 4th Dist. No. 09CA29, 2010-Ohio-4507; that the defendant's prior acts or statements of accomplices and/or other witnesses, demonstrated the defendant's knowing participation in the manufacture of methamphetamine, *Cumberledge, supra*; the defendant, in addition to chemicals, possessed the actual physical equipment needed to manufacture methamphetamine, such as beakers, filters, tubing, electrical tape, copper fittings, a heat source, etc., *State v. Throckmorton,* 4th Dist. No. 08CA17, 2009-Ohio-5344, reversed on other grounds; the defendant possessed or had known access to a methamphetamine lab, or had injuries consistent with work in a methamphetamine lab, *State v. Downing,* 12th Dist. No. CA2009-09-036; the defendant possessed quantities of the drug, or known drug delivery devices, i.e., syringes, contemporaneous with his possession of the chemicals, *Throckmorton, supra.*"

**{¶64}** *Seldon* held at ¶ 25:

"This court is not requiring all of the above, we are just referencing the many methods the state may use to prove an intent on the part of the accused to manufacture methamphetamine, none of which were utilized by the state. The state's entire case is based on Seldon's possession of some legally possessed items. It has set forth no evidence that Seldon completed a subsequent act beyond mere possession, no evidence of Seldon's prior production of the controlled substance and no evidence that Seldon knew how to manufacture the drug. *See Cumberledge, Stevenson*. In fact,

Seldon testified that he did not know how to manufacture methamphetamine."

{¶65} In this case, it is true that the prosecution was unable to present evidence that Appellant knew how to manufacture methamphetamine; that he had made previous admissions that he intended to manufacture or participate in the process; or that he had been injured in the process. Furthermore, none of the evidence produced was discovered on Appellant's person, such as chemicals and ingredients, physical equipment, or delivery devices. However, by the end of Appellant's trial, the jury had heard the following evidence:

1) That Appellant and Kinzer purchased pseudoephedrine on the same dates at Pike County pharmacies:

2) That garbage bags found in Scioto County contained the envelope addressed to Ms. Kinzer; 3 empty boxes of Leader Allergy Relief D-24; empty pill blister packs; an ice compress containing ammonium nitrate with the corner cut; an empty package of electrical tape; the grocery list; and a Mello Yello bottle containing a syringe;

3) That Appellant and Kinzer purchased pseudoephedrine, traded it for methamphetamine, and Appellant handled the transactions to obtain methamphetamine;

4) That the area where the trash bags were found was where Appellant and Kinzer regularly went to use drugs;

5) That Officer Carlson opined the garbage bags contained a "one-pot" method which had been discarded;

6) That Appellant "always" drove Kinzer's car;

7) That Ms. Kinzer denied discarding the trash bags and cutting the corner of the ice pack containing the ammonium nitrate, and that she denied recognizing the Mello Yello bottle containing the syringe;

8) That Ms. Kinzer's brother had "nothing to do" with the items found in the trash bags;

9) That Asset Production Manager Andy Canterbury verified the Walmart security camera footage and receipts for items purchased by Appellant and Ms. Kinzer on October 3, 2014;

10) That Ms. Kinzer admitted she and Appellant used syringes to inject methamphetamine; and

11) That Ms. Kinzer specified Appellant took her boxes of pseudoephedrine and returned with methamphetamine.

**{¶66}** Based on our review of the trial transcript, we find there was circumstantial evidence in this case supporting the conclusion that Appellant intended to manufacture methamphetamine. Officer Carlson opined the trash bags contained a "one-pot method" discarded in a clandestine location in Scioto County. Appellant was familiar with the area where the trash bags containing the ingredients were discarded because he went there almost daily in late 2014 to inject methamphetamine. Appellant engaged in suspicious transactions and enlisted Kinzer to purchase it for him. They purchased pseudoephedrine together, in frequent transactions, at two different pharmacies. Regarding circumstantial evidence of intent, it has been stated:

"Intent lies within the privacy of an individual's own thoughts and is not susceptible of objective proof." *Wickersham, supra,* at ¶ 30, quoting *State v. Garner,* 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995). So "intent 'can never be proved by the direct testimony of a third person.' " *State v. Moon,* 4th Dist. Adams App. No. 08CA875, 2009-Ohio-4830, ¶ 20, quoting *State v. Lott,* 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990). Rather it " 'must * * * be inferred from the act itself and the surrounding circumstances, including the acts and statements of the defendant surrounding the time of the offense.' " *Id.,* quoting *State v. Wilson,* 12th Dist. Warren No. CA2006–01– 007, 2007-Ohio-2298, ¶ 41. But "persons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." *Garner* at ¶ 60.

**{¶67}** It is a logical inference that Appellant was familiar with the necessity of pseudoephedrine as a key ingredient used to make methamphetamine.  He took control of the boxes Kinzer purchased and returned with the finished product.  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist." *State v. Evans-Goode,* 4th Dist. Meigs No. 15CA10, 2016-Ohio-5361, ¶ 8; R.C. 2901.22(B).  "[W]hether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances * * *." *Garner,* 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995), quoting *State v. Huff,* 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist.2001).

**{¶68}** Furthermore, Appellant "always" drove Kinzer's car. " '[P]ossession' is defined as 'having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.' " *Wickersham, supra*, at ¶ 10, quoting *State v. Gavin,* 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 35; citing R.C. 2925.01(K). "Possession may be actual or constructive." *Gavin;* quoting *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19; citing *State v. Butler,* 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

**{¶69}** " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *Wickersham, supra,* at ¶ 11, quoting *Gavin* at ¶ 36; *State v. Kingsland,* 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.; quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Gavin, supra*, quoting *State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus (1982);

*State v. Brown,* 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19.  For

constructive possession to exist, the State must show that the defendant was

conscious of the object's presence. *Gavin, supra*; *Hankerson* at 91;

*Kingsland* at ¶ 13.  Both dominion and control, and whether a person was

conscious of the object's presence, may be established through

circumstantial evidence. *Gavin, supra; Brown* at ¶ 19.  "Moreover, two or

more persons may have joint constructive possession of the same object." *Id.*

{¶70}  Here, and based on the evidence, it is a logical inference that

Appellant had constructive and actual possession and control over Kinzer's

vehicle, the discarded trash bags, and the contents therein.  Kinzer

specifically excluded her brother as having anything to do with the contents

of the trash bags.  She also denied cutting the corner of the ice pack and

dumping the trash.  The logical inference is that Appellant, frequently in

possession and control of her vehicle, would have been the person to cut the

ice pack and dump the trash.

{¶71}  Kinzer testified she and Appellant used syringes to inject

methamphetamine.  While Kinzer denied knowledge of the Mello Yello

bottle containing her DNA and syringe found in the trash, the jury was free

to believe some, all, or none of her testimony, and was instructed

accordingly.  Combing Kinzer's denials, along with the absence of any

evidence that other person or person had control or custody of her car or the

trash bags, circumstantially links Appellant to the "one-pot method"

discarded alongside the desolate Scioto County road.  Importantly, in the

absence of other evidence that someone else cut the ice pack, it may be

logically inferred the Appellant completed a "subsequent act, * * * in the

manufacturing process."  As cited above, "intent" is to be inferred from the

acts and surrounding circumstances.

{¶72}  In *State v. Isaac,* 5th Dist. Richland No. 15CA87, 2016-Ohio-

7376, the defendant maintained the State had failed to prove the culpable

mental state of "knowingly" in two counts of illegal manufacture of

methamphetamine and illegal assembly or possession.  Isaac, who was

temporarily staying with a friend while experiencing marital problems,

asserted she had no knowledge of the methamphetamine lab in the basement

of her friends' residence.  Isaac maintained the State did not demonstrate her

knowledge of the methamphetamine lab or the possession of chemicals in

the basement.  The appellate court disagreed, holding at ¶ 57:

> "Viewing the evidence in a light most favorable to the
> prosecution, we find a rational trier of fact could have found the
> essential elements of the charges proven beyond a reasonable
> doubt. Testimony at trial established [Isaac] had a prior history
> of purchasing a significant quantity of pseudoephedrine,
> including a recent attempted purchase with [her codefendant]
> with whom she was residing on August 12, 2014. Specifically,
> [Isaac] purchased an inordinate amount of pseudoephedrine in

the months prior to August 12, 2014. Testimony of [her friend's husband] at trial established [Isaac] used the basement in the home, including doing laundry there. Items consistent with the manufacture of methamphetamine were discovered in the basement. The liquid from the one-pot cook method taken from the home subsequently tested positive for methamphetamine. Viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could find beyond a reasonable doubt Appellant knew about and participated in the manufacture of methamphetamine and possessed chemicals necessary for the manufacture of methamphetamine * * *." *Id.* at 58.

{¶73} Appellant's convictions, like Isaac's, are based on circumstantial evidence entirely. Appellant's intent was proved by circumstantial evidence. Appellant, like Isaac, had an extensive purchase history of pseudoephedrine products, and like Isaac, purchased with a friend. Like Isaac, who had control of the basement where she was staying and the one-pot method was discovered, Appellant had custody and control of Kinzer's car and the discarded one-pot method. We reiterate the jury was in the best position to observe the witnesses and evaluate their credibility. Having reviewed the entire record, weighed the entirely circumstantial evidence, and considered the credibility of the witnesses, we do not find this to be the exceptional case where the evidence weighs heavily against conviction. The evidence supports the finding that Appellant had engaged in the manufacture of methamphetamine, along with the illegal assembly and possession of one or more chemicals necessary to manufacture

methamphetamine. Therefore his conviction is not against the manifest weight of the evidence. Furthermore, having found his conviction is not against the weight of the evidence, we necessarily find that it is supported by sufficient evidence. As such, we overrule Appellant's second assignment of error and affirm the judgment of the trial court.

## ASSIGNMENT OF ERROR THREE

{¶74} Appellant argues the testimony by the Thomas Kelley, the pharmacist for Walmart in Waverly, about the common practice of Scioto County individuals coming to Pike County to purchase pseudoephedrine and other chemicals commonly used to manufacture methamphetamine should have been excluded under Evid.R. 403(A). Appellant contends the testimony provided no probative value as to the ultimate determination and was highly prejudicial. Citing a lack of evidence linking Appellant to the alleged crime, Appellant argues the testimony had the effect of unfairly swaying the jury.

## A. STANDARD OF REVIEW

{¶75} The admission or exclusion of evidence generally rests within the trial court's sound discretion. *State v. Minton,* 4th Dist. Adams No. 15CA1006, 2016-Ohio-5427, ¶ 45; *State v. Green,* 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶ 14 (4th Dist.). Thus, an appellate court

will not disturb a trial court's ruling regarding the admissibility of evidence absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. *Id.* As mentioned previously, an abuse of discretion implies that a court's attitude is unreasonable, arbitrary, or unconscionable.

## B. LEGAL ANALYSIS

**{¶76}** In this case, the prosecutor had asked Kelley, the pharmacist: "Are there products that perform the legitimate function that don't contain the chemical that can be converted to meth?" The pharmacist explained there is another product the pharmacy could provide which is not easily broken down into methamphetamine. The pharmacist explained that many times, purchasers are not deterred by the recommendation, presumably because they are wanting to obtain pseudoephedrine for an illegal purpose. The pharmacist continued:

> "Well, unfortunately we- - you know, we do see many folks coming in from Scioto County to our pharmacy. And - - I say that because I've actually visually saw Scioto County driver's license, non-driver's and – and they will come in and ask for pseudoephedrine or 12 hour decongestant."

**{¶77}** At this point, defense counsel objected and was overruled. Kelley continued:

> "Typically on a - - and I work five days a week typically. It's not uncommon for us in a day's time at our Waverly Walmart we will probably have 40 – 30 to 40 people come in asking for 12 hour decongestant. Typically out of that 30- to 40 half, if

not more than half, will be Scioto County residents. And they are coming to us requesting - - I've actually visually seen - - as I was sitting on my lunch break one day it's - - it's so apparent - - "

{¶78} Shortly thereafter, defense counsel interposed another objection which was overruled. Kelley continued:

"Well many times and these are - - these are - - what makes me understand the process more readily, these are not patients. First of all, they have to present a driver's license to us that has to be legal. Many times these folks that present them, we ask - - we verify their address with them. They won't know what their address is on their ID. They are not patients. They don't have prescript - - they're not getting prescriptions from our pharmacy. So they don't have an established relationship with our pharmacy."

{¶79} Counsel again objected and was overruled. The State clarified that Kelley was not testifying, in particular, about Appellant, but was "generally speaking" of what he observed as a pharmacist. The State now argues that the pharmacist's testimony was rationally based upon the pharmacist's perception and was helpful to the jury in the determination of the reasons a Scioto County resident, such as Appellant, would go to Pike County to purchase pseudoephedrine. Citing Evid.R. 701, the State argues this testimony was admissible. The pharmacist went on to testify as to the federal regulations Walmart is required to follow before they can sell pseudoephedrine products.

{¶80} Since the adoption of the Rules of Evidence, both on the state

and federal levels, many courts have used an Evid.R. 701 analysis and have

allowed lay witnesses to testify about, for example, the identity of a drug.

*State v. Johnson,* 4th Dist. Gallia No. 2014-Ohio-4032, ¶ 38; *State v. McKee,*

91 Ohio St.3d 292, 2001-Ohio-41, 744 N.E.2d 737.  Evid.R. 701 provides:

> "If the witness is not testifying as an expert, his testimony in the
> form of opinions or inferences is limited to those opinions or
> inferences which are (1) rationally based on the perception of
> the witness and (2) helpful to a clear understanding of his
> testimony or the determination of a fact in issue."

> "[C]ourts have permitted lay witnesses to express their opinions
> in areas in which it would ordinarily be expected that an expert
> must be qualified under Evid.R. 702. Although these cases are
> of a technical nature in that they allow lay opinion testimony on
> a subject outside the realm of common knowledge, they will
> fall within the ambit of the rules requirement that a lay witness's
> opinion be rationally based on firsthand observations and
> helpful in determining a fact in issue. These cases are not based
> on specialized knowledge within the scope of Evid.R. 702, but
> rather are based upon a layperson's personal knowledge and
> experience."

{¶81}  In the case sub judice, the pharmacist had been identifying

Appellant and Kinzer's purchase records when the testimony occurred.  The

pharmacist went on to testify about the NPLEX system and Walmart's role

in keeping these required records.  We find the additional testimony about

Kelley's observation that individuals, with no patient relationship to the

Walmart pharmacy, often come from Scioto County to Pike County to

purchase pseudoephedrine, is helpful to an understanding of why such meticulous records are required by the government and kept by Walmart.

{¶82} Yet, we agree that Appellant makes a valid argument. While we have found no cases where this type of testimony from a pharmacist or pharmacy employee has been challenged, we liken Kelley's testimony about the frequent practice of individuals coming from out of county to purchase pseudoephedrine to testimony about defendants being observed or arrested in "high crime areas."

{¶83} In *State v. Draper,* 10th Dist. Franklin No. 02AP-1371, 2003-Ohio-3751, the defendant contended that an officer's testimony concerning the high incidence of drug-trafficking and narcotics and weapons arrests in the area where a defendant was arrested also constituted impermissible other acts evidence, the admission of which deprived him of a fair trial. The *Draper* court began by noting that Evid.R. 404(A) bars evidence regarding a defendant's character and evidence of the defendant's other acts to demonstrate that character. *Id.* at 21. The appellate court pointed out the challenged evidence referred to the character of the neighborhood and the general acts of the people in the neighborhood, not the character or other acts of defendant. *Id. See State v. Attaway* (Apr. 5, 2001), Cuyahoga App. No. 77641, appeal not allowed, 93 Ohio St.3d 1410, 754 N.E.2d 258.

**{¶84}** *Draper* held that the challenge to the evidence concerning the neighborhood was probably more conducive to review under Evid.R. 402, speaking to the inadmissibility of irrelevant evidence, or Evid.R. 403(A), addressing the inadmissibility of relevant evidence if its probative value is substantially outweighed by danger of unfair prejudice. *Id.* Ultimately, however, the appellate court held: "Although references to an area being a high-crime area, in some circumstances, may be irrelevant or prejudicial, see *State v. Santiago,* 10th Dist. Franklin No. 02AP–1094, 2003-Ohio-2877, at ¶ 26, citing *State v. Maddox* (June 29, 2001), Montgomery App. No. 18389, appeal not allowed, 93 Ohio St.3d 1459, 756 N.E.2d 1235, the trial court's allowing the testimony under the circumstances of this case did not prejudice defendant." *See also State v. Dodson,* 10th Dist. Franklin No.10AP-603, 2011-Ohio-1092, ¶¶ 33-36.

**{¶85}** While we recognize the potential for prejudicial effect by Kelley's testimony, we do not think it far outweighed the probative value of the testimony in aiding the jury's understanding of why pseudoephedrine sales are so heavily regulated by the government. Furthermore, we do not perceive this evidence as the sole evidence the jury relied upon in convicting Appellant. As discussed in our resolution of assignment of error two above, the circumstantial evidence of Appellant's near daily use of

methamphetamine; the evidence of Appellant's possession and control of Kinzer's vehicle, to the exclusion of anyone but Kinzer, where he often used methamphetamine; Appellant's own pseudoephedrine purchase records; his appearance on the Walmart surveillance video on the relevant purchase dates, Kinzer's denial that she discarded the trash bags containing the "one-pot" method; and Kinzer's denial of knowledge of the Mello Yello bottle and syringe, along with her denial that she cut the corner of the ice compress, all point to Appellant's knowledge and intent to manufacture methamphetamine. As such, we find ample evidence that Appellant would have been convicted, had Kelley's testimony been excluded. We do not find it highly prejudicial nor an abuse of the trial court's discretion by allowing it.

{¶86} For the foregoing reasons, we overrule Appellant's third assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:     Concurs in Judgment and Opinion.
Harsha, J.:   Concurs in Judgment and Opinion as to Assignment of Error II;
                    Concurs in Judgment Only as to Assignments of Error I & III.

For the Court,

BY:    _____
          Matthew W. McFarland, Judge

**NOTICE TO COUNSEL:  Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**