[Cite as *State v. Rudolph*, 2019-Ohio-468.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,      :

           :  Case No. 17CA12

  Plaintiff-Appellee,   :

           :

  vs.         :  <u>DECISION AND JUDGMENT</u>
           :  <u>ENTRY</u>

BRUCE J. RUDOLPH    :

           :

  Defendant-Appellant.  :  **Released: 02/05/19**
_____
<u>APPEARANCES:</u>

Alex Kochanowski, Cincinnati, Ohio, for Appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and W. Mack Anderson, Assistant Lawrence County Prosecuting Attorney, Ironton, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Bruce J. Rudolph appeals two judgment entries of the Lawrence County Court of Common Pleas dated July 20, 2017. Appellant was convicted of one count of Complicity to Tampering with Evidence, R.C. 2923.03(A)(2)/R.C. 2921.12(A)(1)(b), a felony of the third degree. On appeal, he asserts that (1) the trial court erred in overruling his Crim.R. 29 Motion for Acquittal; (2) the trial court erred by finding the State of Ohio possessed subject matter jurisdiction in his case; and (3) the trial court erred in overruling Appellant's objection to inadmissible and highly prejudicial

evidence.  Based upon our review of the record, we find no merit to Appellant's assignments of error.  Accordingly, we affirm the judgment of the trial court.

## FACTS

{¶2} On November 29, 2016, Appellant was indicted on one count of Tampering With Evidence, R.C. 2921.12(A)(1)(b).  The indictment was related to another criminal case, that of Marvin Sexton, who pleaded guilty to attempted murder, burglary, and tampering with evidence, after he severely beat and injured his ex-girlfriend, Melissa Howard, on November 3, 2016, who was in a coma and on life support.  The assault took place in Chesapeake, Ohio.

{¶3} Appellant was accused of tampering with evidence because he admittedly burned Sexton's jeans and socks after Sexton called him and requested he "get rid of" the items Sexton was wearing at the time he beat Ms. Howard.  At the time of the assault, Sexton had been staying with Appellant and another man, Frank Smith, in Huntington, West Virginia. Appellant burned Sexton's jeans and socks outside his residence in West Virginia.

{¶4} Appellant eventually proceeded to trial.  Prior to trial, his attorney, Brian J. Cremeans, filed a Motion in Limine barring use of any and

all evidence against Defendant for lack of subject-matter jurisdiction. Counsel argued that the State had disclosed no evidence through the discovery process indicating that the tampering statute had been violated in the State of Ohio. The State's response submitted that the evidence at trial would support a conviction of complicity to tampering with evidence and that the State planned to request a complicity jury instruction. The trial court denied the Motion in Limine.

{¶5} Defense counsel also filed a Motion in Limine requesting the trial court prohibit the use of any pictures, video, testimony, or documentary evidence describing the details of the attempted murder of Melissa Howard. Counsel requested the State be limited to providing the facts as alleged in the Bill of Particulars. Counsel argued Appellant would be unfairly prejudiced due to the high probability that the jury would equate Appellant's actions with the crimes of Marvin Sexton. The trial court also denied this motion.

{¶6} Appellant proceeded to a jury trial on July 13 and 14, 2017. The trial court issued a complicity instruction to the jury. Appellant was convicted of Complicity to Tampering with Evidence, also a third-degree felony. On July 18, 2017, Appellant was sentenced to a term of incarceration of two (2) years in the appropriate state penal institution.

{¶7} Appellant's notice of appeal was filed August 1, 2017 by Attorney Warren Morford. The notice of appeal attached two entries, a judgment entry which indicated Appellant's conviction and established the sentencing date, and a judgment entry final appealable entry [sic], which set forth the entire sentence. Both entries were stamp-filed July 20, 2017. In addition, the record transmitted to this court contained an amended judgment entry final appealable entry [sic] stamp-filed August 29, 2017.

{¶8} Where necessary, additional facts will be set forth below.

ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ERRED IN OVERRULING
      APPELLANT'S MOTION FOR ACQUITTAL WHEN
      THE EVIDENCE WAS INSUFFICIENT TO FINDING
      GUILT BEYOND A REASONABLE DOUBT.

II.   THE TRIAL COURT ERRED IN FINDING THAT THE
      STATE OF OHIO POSSESSED SUBJECT MATTER
      JURISDICTION.

III.  THE TRIAL OCURT ERRED IN OVERRULING
      APPELLANT'S OBJECTION TO THE
      PRESENTATION OF INADMISSIBLE AND HIGHLY
      PREJUDICIAL EVIDENCE.

{¶9} Before we proceed to analysis of Appellant's arguments herein, we note that that Amended entry filed August 29, 2017 was not supplemented in some manner to the notice of appeal filed by Attorney Morford. Our review of the record indicates the only difference between the

Amended entry and the Amended Judgment Entry Final Appealable Entry is that in the twelfth paragraph on page three of the Amended entry, it is stated: "Defendant is granted credit for time served, to-wit: 12 days, along with future days while Defendant awaits transport to the appropriate state penal institution." In the appealed from Judgment Entry Final Appealable Entry, that same paragraph sets for the number of days granted credit for time served, along with setting forth the actual dates previously served. Both entries were signed by the prosecuting attorney and Appellant's trial counsel, Attorney Cremeans.

{¶10} Appellate counsel was granted two extensions of time to file the appellate brief. On March 9, 2018, Attorney Morford filed a motion to withdraw as counsel, and this motion was granted. On March 23, 2018, Appellant's current counsel, Attorney Kochanowski, was appointed.

{¶11} Generally, after a notice of appeal has been filed, a lower court loses jurisdiction to issue any orders that would impair the ability of the appellate court to exercise jurisdiction over the issue that has been appealed. *Conley v. Warden, CM Newspapers, Inc. v. Dawson* (Jan. 28, 1992), 10th Dist. No. 91AP–1067, 1992 Ohio App. LEXIS 344. The impairment "must be of a nature that actually interferes with the exercise of appellate

jurisdiction by the appellate court." *Olen Corp. v. Franklin Cty. Bd. of Elections*, 43 Ohio App.3d 189, 200, 541 N.E.2d 80 (1st Dist.1988).

{¶12} A similar situation to Appellant's here occurred in *State v. Kase,* 187 Ohio App.3d 590, 932 N.E.2d 990, 2010-Ohio-2688 (7th Dist.). There, after Kase filed a notice of appeal, the trial court sua sponte issued an amended judgment entry of sentencing. The appellate court observed at 38:

> "Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal." *In re S.J.,* 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, at ¶ 9, citing *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978). In other words, "the trial court retains all jurisdiction not inconsistent with the court of appeals' jurisdiction to reverse, modify, or affirm the judgment." *Yee v. Erie Cty. Sheriff's Dept*., 51 Ohio St.3d 43, 44, 553 N.E.2d 1354 (1990), citing *In re Kurtzhalz*, 141 Ohio St. 432, 48 N.E.2d 657 (1943), paragraph two of the syllabus."

The *Kase* court concluded that because the trial court's amended judgment entry of sentencing did not change the sentence, but simply provided additional reasoning underlying the court's sentencing decision, the amended entry was not inconsistent with the appellate court's jurisdiction. *Id.* at ¶ 12. Therefore, the *Kase* court considered the appeal.

{¶13} This reasoning is also applicable herein. The amended entry issued after the notice of appeal was filed does not change Appellant's sentence. Nor does it impair this court's ability to exercise its jurisdiction

over the issues Appellant has raised.  Therefore, we proceed to consideration of his assignments of error.

ASSIGNMENTS OF ERROR ONE AND TWO

{¶14} Appellant was convicted of Complicity to Tampering with Evidence.[1] In the first assignment of error, Appellant asserts the trial court erred in overruling his Crim.R. 29 Motion for Acquittal when the State's evidence was insufficient to prove that Appellant knew anything about Sexton's criminal acts at the time he burned Sexton's clothing.  He also argues there was insufficient evidence of subject matter jurisdiction in the State of Ohio.

{¶15} In the second assignment of error, Appellant focuses on his argument that the evidence presented at trial was insufficient to show that Appellant tampered with evidence in the State of Ohio.  Appellant points out that the facts in this record indicate that (1) he was located in West Virginia throughout the events alleged, and (2) the actions which gave rise to the allegations occurred entirely within West Virginia.  Therefore, Appellant concludes, the State of Ohio lacked subject-matter jurisdiction and his conviction must be vacated.

---

[1] While Appellant was indicted on Tampering with Evidence and convicted of Complicity, it appears the pleadings have not been amended to conform to the evidence.

STANDARD OF REVIEW

{¶16} Under Crim.R. 29(A), "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of acquittal * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." *State v. Colley,* 2017-Ohio-4080, 92 N.E.3d 1 (4th Dist.), at ¶ 39, quoting *State v. Wright,* 2016-Ohio-7654, 74 N.E.3d 695, ¶ 21. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *Id.* quoting *State v. Tenace,* 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37; *State v. Husted,* 2014-Ohio-4978, 23 N.E.3d 253, ¶ 10 (4th Dist.).

{¶17} In *State v. Young,* 4th Dist. Meigs No. 458, 1992 WL 18845 (July 28, 1992), Young, who was tried in Meigs County, asserted that there was insufficient evidence of venue. Young argued that all elements of the charged offense, kidnapping, were committed in West Virginia. This court observed that Section 10, Article I of the Ohio Constitution fixes venue, or the proper place to try a criminal matter, by stating that an accused shall be allowed a speedy public trial by an impartial jury of the "county in which the offense is alleged to have been committed * * *." *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). Further, Crim.R. 18(A) provides that

the venue of a criminal case shall be as provided by law.  We noted that the provisions of R.C. 2901.12 were controlling.

{¶18} Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant. *Young, supra*, at *3, citing *State v. Giffin*, 62 Ohio App.3d 396, 398, 575 N.E.2d 887, (10th Dist.1991); *see also State v. McCartney*, 55 Ohio App.3d 170, 547 N.E.2d 1189, (9th Dist.1988).  In the prosecution of a criminal case, it is not essential that the venue of the crime be proved in express terms, provided it be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment or criminal affidavit. *State v. Vrona*, 47 Ohio App.3d 145, 150 (1988), citing *State v. Gribble*, 24 Ohio St. 85, 150, 263 N.E.2d 904 (1970).  R.C. 2901.12(G) vests venue in the jurisdiction where the defendant's offense, or any element thereof, was committed. *Headley, supra*, at paragraph one of the syllabus.  In *Young*, we observed that although venue is not an essential element of the crime, "it appears intuitively logical that the sufficiency of the evidence standard of review should apply here since, as with essential elements of the charged crime, the state must prove venue beyond a reasonable doubt." *Id.*

{¶19} Therefore, because the standard of review applicable to Appellant's arguments under the first and second assignments of error is the "sufficiency-of-the-evidence" standard, we will address both assignments of error jointly. "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.* at 22, quoting *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781(1979). In making its ruling a court does not weigh the evidence but simply determines whether the evidence, if believed, is adequate to support a conviction. In other words, the motion does not test the rational persuasiveness of the State's case, but merely its legal adequacy. *State v. Reyes–Rosales,* 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, at ¶ 15. Over a century of well-established jurisprudence clearly mandates that a motion for judgment of acquittal must be granted when the evidence is insufficient for reasonable minds to find that venue is proper. *State v. Hampton,* 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 24.

LEGAL ANALYSIS AS TO WHETHER JURISDICTION TO TRY
APPELLANT LIES IN LAWRENCE COUNTY, OHIO.

{¶20} Appellant was indicted on one count of Tampering with Evidence.  However, at trial, the State proceeded on a theory of complicity.  Appellant was convicted of R.C. 2923.03(A)(2)/2921.12(A)(1)(b).  R.C. 2923.03(A)(2), Complicity, provides: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense * * *."  R.C. 2921.12(A)(1), Tampering with Evidence  provides: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *."  The trial court instructed the jury as follows:

## COMPLICITY

"The State of Ohio has presented a theory that the Defendant acted in complicity with the principle offender in the commission of tampering with evidence.  A person who is complicit with another in the commission of a criminal offense is regarded as guilty as if he personally performed every act constituting the offense.  This is true even if he did not personally perform every act constituting the original offense or was not physically present at the time the offense was committed.* * *."

## JURISDICTION

"A person is subject to criminal prosecution and punishment in this state if any of the following occur.  The person commits an offense under the laws of this State, any element of which takes place in this state or while out of this state, the person conspires or attempts to commit or is guilty of complicity in the commission of an offense in this state.  When the offense is complicity under division (A)(3) of section 2901.11 of the Revised Code.  The offender may be tried in any jurisdiction in which the principle offender may be tried."

{¶21} At trial, Marvin Sexton testified on behalf of the State.  Sexton acknowledged he had previously pleaded guilty to attempted murder, burglary, and tampering with evidence in the Lawrence County Court of Common Pleas. Sexton testified his convictions were for crimes which occurred on November 3, 2016 in Chesapeake, Ohio.  The court admitted into evidence a certified copy of Appellant's conviction as State's Exhibit 15.

{¶22} Sexton testified that on the date he assaulted Melissa Howard, he had been living intermittently in West Virginia with Frank Smith and Appellant.  Sexton had known Frank Smith for years, but had become acquainted with Appellant only within the previous year.  Sexton testified he was heavily intoxicated on suboxone and beer.  After assaulting Ms. Howard, Sexton ran to the Ohio River and swam to the other end of Chesapeake, where his truck was parked nearby.  When Sexton reached his truck, he used a cell phone to call Frank Smith and ask him to pick him up.

{¶23} When Smith arrived in Chesapeake, he drove Sexton back to Appellant's residence in West Virginia. Sexton quickly changed his clothes, gathered his belongings, and left. Frank Smith then drove Sexton to Steubenville, Ohio.

{¶24} On the way to Steubenville, Sexton made one phone call to Appellant. He told Appellant to "get rid of" his pants because he knew they were evidence. Sexton testified he was in West Virginia when he told Appellant this.[2]

{¶25} Detective Aaron Bollinger testified he obtained a recorded statement from Appellant on November 5, 2016. The State also introduced Appellant's recorded statement into evidence as Exhibit 15. The pertinent portion of Appellant's statement reads as follows:

Bollinger:    What's the next thing you know?

Rudolph:    Frank got a call from him. * * *
Rudolph:    Yeah, same morning. Told him he had to pick him up or something. Then he said no, I'm just going to jump in the river. Then Frank, then he got a call back, after he hung up he got a call back and told Frank to pick him up, he was over

---

[2] The State was unable to provide evidence of phone records establishing from where Sexton made his call to Appellant. Given that Sexton was traveling to Steubenville, Ohio, it is possible that the call was made in Ohio. The jury was instructed that the testimony of an accomplice was a matter for their determination. If the call was made in Ohio, this may be interpreted as some evidence of Sexton's tampering activity in Ohio and thus, an element of Appellant's crime occurring in Ohio.

laying in his truck at his ex-old lady's house.  And Frank went over there I guess to pick him up and brought him up here. Then they took off.

Bollinger:    So they come up here, Marty and Frank Smith came up here to your all's house?

Rudolph:    Yeah.

Bollinger:    Did he pack some clothes or what?

Rudolph:    He took all of his clothes. * * *

Bollinger:    What was Marty wearing when he got here?

Rudolph:     He was wearing a pair of jeans and a sweatshirt. He put the sweatshirt back on when he left. * * *

Bollinger:    And he had, took off his pants?

Rudolph:    Took off his pants, they were soaking wet.  Took off his pants and a pair of socks and I just threw them in the burn pile out here and burned them. * * *

Bollinger:    Did Marty call you at some point while him and Frank, after him and Frank Left?

Rudolph:    He didn't call me.

Bollinger:    Because Frank's indicating to me that Marty called you and said he, did Marty have his clothes in the washer at some point?

Rudolph:    He had them, no, he threw them in the washer and he told me to get them out of there and throw them in the burn pile.
Bollinger:    Who did?

Rudolph:    Marty did. * * *

Bollinger:     He called your cell phone?

RudolphL     Yeah. * * *

Bollinger:     And that was on Thursday they called you?  It was after they left?

Rudolph:     Yeah, the same day after they left. * * *

Bollinger:     And he said burn his clothes huh?

Rudolph:     Yeah.  And there wasn't nothing wrong with the clothes.  There wasn't nothing on them.

Bollinger:     My understanding is that you seen one spot of blood.

Rudolph:     One spot down here, I think it was the right or left knee. I forget which one it was.  Because it had a hole in the knee.  But there was like a small, a real small red spot on it.  And I thought it was paint because they was always painting and shit too.  But that was the only spot there's any spots on the fucking jeans. * * *

* * *

Bollinger:     Where did you burn them at?

Rudolph:     Right here in this pit. * * *

Bollinger:     Okay. If they're damp, was it hard to burn them?

Rudolph:     No, I threw them in the dryer first.

Bollinger:     So you dried them first?

Rudolph:     Yeah.

Bollinger:     And then you burned them?

Rudolph:     Yeah.

Bollinger:     What else did you burn with it?

Rudolph:     A pair of socks and the jeans.  That's the only thing he left.  The socks, because he changed the socks. * * *

{¶26} The evidence adduced at trial clearly demonstrates that Appellant's actions of burning Sexton's clothing took place in West Virginia, and that at no time was Appellant present in Lawrence County, Ohio.  Given the absence of any evidence tying Appellant to Lawrence County, we find jurisdiction necessarily hinges on R.C. 2901.11(A)(3), given that Sexton, the principal offender, was tried in Lawrence County.  A certified copy of Sexton's conviction states as follows at Paragraph 3:

> "The Defendant previously entered a plea of guilty on March 15, 2017, to the Indictment charging * * * Tampering with Evidence, as charged in Count three of the Indictment, a felony of the third degree and Ohio Revised Code Section 2911.12 * * *."

{¶27} Crim.R. 11 governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *State v. Meade,* 4th Dist. Scioto No. 17CA3816, 2018-Ohio-3541, at ¶ 7, quoting *State v. Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at ¶ 8.  Before accepting a guilty plea in a felony case, a trial court must address the defendant personally and determine that "the defendant is making the plea voluntarily, * * *." Crim.R. 11(C)(2)(a).  The court must both inform and

determine that the defendant understands that he is waiving various constitutional rights including the right "to require the state to prove the defendant's guilty beyond a reasonable doubt at a trial * * *." Crim.R. 11(C)(2)(a). In addition to the various rights that would be waived, the court must determine that the defendant "understands the effect of the plea of guilty or no contest, * * *." Crim.R. 11(C)(2)(b).

{¶28} While in Ohio, Sexton, by fleeing, removed the clothes from the scene of the crime. Sexton knew his clothing would be considered evidence when he asked Appellant to "get rid of" them. He entered a guilty plea to tampering with evidence and we presume that the court properly applied the law with regard to the acceptance of his guilty plea. *National City Real Estate Services LLC v. Frazier,* 2018-Ohio-982, 96 N.E.3d 311 (4th Dist.) at ¶ 77, citing *Savage v. Savage,* 4th Dist. Pike No. 15CA856, 2015-Ohio-5290, at ¶ 23 (stating that "in the absence of evidence to the contrary, we presume the regularity of the trial court proceedings and presume that the trial court properly applied the law to the facts of the case"). While we don't know whether Sexton requested Appellant to "get rid of" the clothing while he was in Ohio or West Virginia, his initial act of removing the clothing from the crime scene occurred in Ohio. At least one element of Sexton's crime of tampering with evidence occurred in Ohio.

{¶29} Appellant aided and abetted Sexton by obliging his request, albeit from a location in West Virginia. "When an individual acts to aid or abet a principal in the commission of an offense, the individual and principal are equally guilty and the individual is prosecuted and punished as if he were a principal offender." *State v. Phillips,* 9th Dist. Summit C.A. No. 27552, 2017-Ohio-1186, quoting *State v. Shabazz,* 146 Ohio St.3d 404, 2016–Ohio– 1055, ¶ 21, citing R.C. 2923.03(F).

{¶30} For the foregoing reasons, we find any rational trier of fact could have found that venue was proven beyond a reasonable doubt. As such, Appellant's argument that venue is Lawrence County was not proper has no merit. Accordingly, the portion of Appellant's first assignment of error relating to this argument and the second assignment of error are hereby overruled.

## LEGAL ANALYSIS AS TO APPELLANT'S KNOWLEDGE OF SEXTON'S CRIMINAL ACTS

{¶31} Under the first assignment of error in which Appellant asserts error with regard to the trial court's ruling on the Crim.R. 29 Motion for Acquittal, he argues that the State failed to provide sufficient evidence that Appellant knew anything about Sexton's criminal acts or that the clothing was evidence of a crime. Therefore, he was unaware he was destroying

potential evidence sought for use in an official investigation.  For the reasons

which follow, we disagree.

{¶32} Appellant contends that the record demonstrates he barely knew

Sexton and that he was unaware Sexton had brutally beaten his ex-girlfriend,

Melissa Howard.  Appellant makes much of the fact that Sexton's trial

testimony indicates the matter was not discussed when Sexton briefly

stopped at Appellant's residence to change clothes and flee the area.

Further, the evidence indicates the assault was not discussed when Sexton

later called Appellant and asked him to "get rid of" the clothing.  At

sentencing, Appellant emphasized:

> "Well, your Honor.  Like he was saying, when I got the phone
> call I thought they were just arguing, you know.  I didn't know
> there was a death…you know, someone is going to die or
> anything.  I thought they were just arguing and everything.
> * * * I didn't really know what was going on.  I didn't know it
> was evidence until the police officer showed up at my house."

{¶33} However, other evidence within the record, namely

Appellant's recorded statement given to Detective Bollinger, Exhibit

10, belies Appellant's denial and underscores his knowledge that a

serious crime had been committed.  The relevant portions of his

recorded statement are set forth as follows:

> Rudolph:     * * * Yeah, he [Sexton] stayed up here with us
> about thirty days or something like that. If that. And then we
> got that phone call that night.

Bollinger:    Phone call what night?  Do you remember? * * *

Rudolph:    I guess he butt dialed his phone or something to Frank's phone and Frank put me on speaker so I could hear it. It sounded like she was saying 'you're killing me, you're killing me' and shit. * * *

Bollinger:    And actually the morning of this, according to Frank, was Thursday morning. * * *

Rudolph:    It might have been.  It might have been. Cause I was sitting over there in my chair where I always sit. * * *

Bollinger:    You know about what time it was?

Rudolph:    About seven in the morning.  Somewhere in there.

Bollinger:    And what did you hear?

Rudolph:    I heard screaming and shit.

Bollinger:    Okay, what was she saying?

Rudolph:    She was saying 'please Marty, don't.'  She was saying 'Marty.'  Said 'don't.'  She said 'you know I love you.' And she said 'don't, you're killing me.'

Bollinger:    Did you hear what he said?  Did you hear Marty's voice?

Rudolph:    No.  I heard him call her a fucking whore but that's it.
Bollinger:    Then what do you know next?

Rudolph:    Then I heard glass break and shit and the phone went off.  That was it.

{¶34} Later on in the recorded statement, this exchange occurred:

Bollinger:    Then why would you even think about noticing blood, I mean, you had to know that something was fucking up. You know what I mean? Straight up.

Rudolph:    I was.  I was thinking, you know, because I heard that on the phone when the speaker was on.  So I checked them * * *.  I said no, I ain't getting in trouble for this shit and that's why I did go ahead and burn them.  Because I wasn't even going to burn them.

{¶35} Finally, the detective questioned Appellant as follows:

Bollinger:    Anything else you know Bruce?

Rudolph:    That's it buddy.  Just what I heard over the speaker of the phone and that shit.  That's the only thing I know.  I didn't even know the woman or nothing.

{¶36} The jury was instructed as follows:

"Before you can find the Defendant guilty you must find beyond a reasonable doubt that on or about the third day of November, 2016 and in Lawrence County, Ohio.  The Defendant knowing that an official investigation was in progress or about to be instituted. Did aid or abet Marvin Sexton in altering, destroying, or concealing anything with purpose to impair it/s value or availability as evidence in this investigation."

{¶37} In this case, we find after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.  Based on his recorded statement, a rational trier of fact could find Appellant was aware Sexton was

committing a criminal act by severely hurting or beating his ex-girlfriend given that he overheard the accidental phone call, prior to Sexton's arrival.

{¶38} The photographs and the investigating officers' testimony reveal that Sexton left Ms. Howard lying in a large pool of her own blood. Additionally, the evidence demonstrates Sexton's clothing was wet because he had swum in the Ohio River to flee the crime scene. Appellant's statement indicates there was one red dot, which Appellant thought was blood or possibly paint on a leg of the jeans. It is reasonable to infer Appellant looked closely at the jeans to discover this dot. Not only did Appellant burn the clothing, he dried it first to make sure it would burn easily. Based on his statement that he wasn't "going to get in trouble for this shit," a rational trier of fact could find Appellant was aware that the clothing was evidence of a crime which was going to be investigated.

{¶39} The jury was instructed about direct and circumstantial evidence, inferences which may be made, the credibility of witnesses, and the exhibits. Specifically, the trial court instructed that, as to exhibits and the testimony relating to them, "You will determine what weight, if any, the exhibits should receive in light of all the evidence." As to a sufficiency analysis, we are mindful that "[i]n determining whether a conviction is based on sufficient evidence, we do not address whether the evidence is to be

believed, but whether, if believed, the evidence against defendant would support a conviction." *Id.,* citing *State v. Smith,* 10th Dist. Franklin No. 08AP-736, 2009-Ohio-2166, ¶ 26, *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, and *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.  As with proof of any element of an offense, complicity may be proved by circumstantial evidence, which has the same probative value as direct evidence. *Phillips* at 19. *See State v. Ward*, 9th Dist. No. 24105, 2008–Ohio–6133, ¶ 18.

{¶40} For the foregoing reasons, we find the trial court did not commit error by overruling the Crim.R. 29 Motion for Acquittal.  The State presented sufficient evidence which, if believed, would support Appellant's conviction.  We find no merit to Appellant's argument that he had a lack of knowledge about Sexton's having committed a criminal act and a lack of knowledge that Sexton's clothing could be evidence for use in an official investigation.  Assignment of error number one is also overruled on this basis.

ASSIGNMENT OF ERROR THREE

{¶41} Appellant argues the trial court erred by overruling his Motion in Limine and then his trial objections as to the unfairly prejudicial pictorial and testimonial evidence concerning the crime scene and Melissa Howard's

appearance and injuries. Appellant points out that he was not charged with attempted murder or burglary and that he was unfairly prejudiced by cumulative, gruesome photographic and testimonial evidence from the State's witnesses. He concludes that the jury was led astray by the highly prejudicial photographs and evidence and improperly convicted Appellant of complicity to tampering with evidence by equating his actions with those of Sexton.

## STANDARD OF REVIEW

{¶42} We initially note that the admission or exclusion of evidence is within the sound discretion of the trial court, and the trial court's decision to admit or exclude such evidence cannot be reversed absent an abuse of discretion. *State v. Hogue*, 23; *State v. Craft*, 4th Dist. Athens No. 97CA53, 1998 WL 255442, *7 (Internal citations omitted.). The term "abuse of discretion" connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Id.;* citing *State v. Xie,* 62 Ohio St.3d 521, 584 N.E.2d 715 (1992); *State v. Montgomery,* 61 Ohio St.3d 410, 575 N.E.2d 167 (1991) (reversed on other grounds). When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. *Craft* at *7; citing

*In re Jane Doe 1,* 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991);

citing *Berk v. Matthews,* 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

LEGAL ANALYSIS

**{¶43}** Melissa Howard was brutally beaten and the photographs of the crime scene, in particular, State's Exhibits 5-8, are difficult to view. These photographs depict Ms. Howard lying in a large pool of blood appearing to flow from her head and upper body. The record and Detective Bollinger's testimony indicate that the crime was committed in two instances. Ms. Howard was first attacked outside her home with a lead pipe. She was later attacked inside her home with a shovel. There was blood inside and outside her home. Detective Bollinger testified "blood was strung everywhere," and that it was a "fairly bloody scene."

**{¶44}** Appellee argues that the photographs were necessary to establish the significant amount of the victim's blood at the crime scene and likely on Sexton's clothing, the key item of evidence which Sexton directed Appellant to destroy. While we agree with Appellee that it was reasonably necessary for the State to establish that a significant amount of blood was at the scene and likely on Sexton's clothing, these four photographs and the associated testimony is arguably unnecessary and cumulative. This is especially true in light of the facts that Appellant's crime was only

tampering with evidence and that he had no part in the attack on Melissa Howard.

{¶45} Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *State v. Maher,* 12th Dist. Fayette No. CA2016-10-015, 2017-Ohio-7807, at ¶ 31. Under Evid.R. 403(A), only evidence that is unfairly prejudicial is excludable. *See State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302. As the Ohio Supreme Court stated, "Evid.R. 403 speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that Evid.R. 403 prohibits." *State v. Skatzes,* 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107, 819 N.E.2d 215; *State v. Barnett,* 12th Dist. Butler No. CA2008-03-069, 2009-Ohio-2196, ¶ 44.

{¶46} Regardless, even if we were to find the trial court erred by overruling Appellant's motion in limine and objections regarding the photographs and the testimony, due to other strong evidence of Appellant's guilt, the trial court's decision would constitute harmless error. "A reviewing court properly finds the erroneous admission of evidence harmless error where there is overwhelming evidence of guilt or some other indicia

the error did not contribute to the conviction." *State v. Gearhart,* 12th Dist. Warren No. 2017-12-168, 2018-Ohio-4180, at ¶17, quoting *State v. Rowley,* 12th Dist. Clinton No. CA2016-10-019, 2017-Ohio-5850, ¶ 24, citing *State v. Pottorf,* 12th Dist. Warren No. CA2014-03-046, 2014-Ohio-5399, ¶ 20. And, we find that is certainly the case here.

{¶47} We find no merit to Appellant's argument that he was unfairly prejudiced by admission of the evidence.  Accordingly, the second assignment of error is also overruled.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment Only.
Harsha, J.:   Dissents.
                                          For the Court,


                         BY:    _____
                                Matthew W. McFarland, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**